**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CAROLE ARMSTRONG,

                          Plaintiff,

    - v -                                     Civ. No. 3:16-CV-1404 (DJS)

NANCY A. BERRYHILL,[1]
*Acting Commissioner of Social Security Administration,*

                          Defendant.

**APPEARANCES:**                          **OF :**

LACHMAN & GORTON                  PETER A. GORTON, ESQ.
Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761

U.S. SOCIAL SECURITY ADMIN.      OONA M. PETERSON, ESQ.
OFFICE OF REG'L GEN.
COUNSEL - REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

**DECISION and ORDER**[2]

        In this action, Plaintiff Carole Armstrong moves, pursuant to 42 U.S.C. § 405(g), for

---

[1] Nancy A. Berryhill became Acting Commissioner of Social Security on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this suit.

[2] Upon Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

review of a decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Presently pending are Plaintiff's and Defendant's Motions for Judgment on the Pleadings pursuant to this Court's General Order 18. Dkt. Nos. 11 & 19. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **denied** and Defendant's Motion for Judgment on the Pleadings is **granted**. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. BACKGROUND

Plaintiff, born on June 13, 1966, filed applications for DIB and SSI on August 28, 2013, claiming an inability to work as of May 29, 2013, due to back problems and a cervical spine injury. Dkt. No. 10, Administrative Transcript ("Tr.") at pp. 195, 212, & 215. Plaintiff completed four or more years of college, and her past work includes positions as a realtor and a residential supervisor, each of which she held for about four years. Tr. at p. 120. On January 22, 2015, a Hearing was held before Administrative Law Judge ("ALJ") Jonathan L. Wesner. Tr. at pp. 94-110. Plaintiff, who was represented by counsel, testified at the hearing. *Id.* On May 28, 2015, ALJ Wesner issued an unfavorable decision finding Plaintiff not disabled. Tr. at pp. 71-93. On November 4, 2016, the Appeals Council concluded there was no basis to review the ALJ's decision, thus rendering the ALJ's decision the final determination of the Commissioner. Tr. at pp. 1-7. This action followed.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a de novo review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325–26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for

substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

## B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in substantial gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s)

meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 404.1520(e) & 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

(2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C.  ALJ Wesner's Findings

ALJ Wesner first found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018. Tr. at p. 76. He found that Plaintiff had not engaged in substantial gainful activity since May 29, 2013, the alleged onset date. *Id.* He found that Plaintiff had the following severe impairments: degenerative disc disease, carpal tunnel syndrome, left ulnar cubital tunnel syndrome, and obesity. Tr. at p. 77. In addition, ALJ Wesner found that there was no evidence to suggest any more than, at most, minimal functional limitations as a result of Plaintiff's vision or hearing deficits, or Plaintiff's balance problems due to right ankle pain. *Id.* ALJ Wesner found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments, specifically considering Listing 1.04, Disorders of the Spine, and Listing 11.14, Peripheral Neuropathies. Tr. at pp. 78-79. ALJ Wesner next found that Plaintiff has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1529 and 416.967(a). Tr. at pp. 79-87. ALJ Wesner then utilized the expedited process (§§ 404.1520(h) and 416.920(h)) to proceed to the fifth step and bypass making a determination at Step 4, because Plaintiff's attorney objected to the inclusion of the vocational expert's ("VE") interrogatory responses regarding Plaintiff's previous work. Tr.

at p. 88. At step 5, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, based on Plaintiff's age, education, work experience, and RFC, utilizing the Medical-Vocational Guidelines ("the Grids"). *Id.*

### D. Plaintiff's Contentions

#### 1. RFC Limitations for Carpal Tunnel and Cubital Tunnel Syndromes

Plaintiff contends that it was error for ALJ Wesner not to find that Plaintiff has functional limitations as a result of her carpal tunnel and cubital tunnel syndromes. Dkt. No. 11, Plaintiff's Memorandum of Law ("Pl.'s Mem. of Law"), pp. 6-12. As an initial matter, there is no inherent inconsistency in ALJ Wesner's determination simply because he found Plaintiff's carpal tunnel and cubital tunnel syndromes to be severe, but did not assign corresponding functional limitations. "An ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citation omitted); *Karam v. Colvin*, 2015 WL 3868542, *7 (W.D.N.Y. June 23, 2015).

##### a. Dr. Rosenberg's Consultative Evaluation

Plaintiff first contends that ALJ Wesner erred by relying on Dr. Rosenberg's consultative examination, which found that Plaintiff had full grip strength. Pl.'s Mem. of Law at pp. 8-9. Plaintiff contends that Dr. Rosenberg's examination is unreliable because

it was performed in November of 2013, only three months after Plaintiff's symptoms started appearing, when Plaintiff's symptoms were intermittent; Plaintiff contends that Dr. Rosenberg's evaluation was therefore premature. *Id.* Defendant contends that in affording Dr. Rosenberg weight, the ALJ properly considered all of the medical evidence that he was required to consider, including that subsequent to Dr. Rosenberg's examination. Dkt. No. 19, Defendant's Memorandum of Law ("Def.'s Mem. of Law"), pp. 6-8.

The Court finds Defendant's contentions persuasive: ALJ Wesner considered all of the objective medical evidence, including that which post-dates Dr. Rosenberg's evaluation. In particular, ALJ Wesner discussed Plaintiff's 2014 testing and treatment with Dr. Khalid Sethi, as well as 2013 and 2014 treatment with Bassett Health Care. Tr. at pp. 82-85. ALJ Wesner reviewed and evaluated the entire medical record, and explained that he accepted the portions of Dr. Rosenberg's opinion that he found to be consistent with the record, particularly his finding of full grip strength. Tr. at pp. 83 & 87. In addition, Plaintiff's contention that Dr. Rosenberg's examination was premature appears illogical, as it occurred six months after Plaintiff's alleged onset date, and three months after Plaintiff applied for benefits. Moreover, the opinion on which Plaintiff contends that the ALJ should have relied pre-dates that of Dr. Rosenberg. *See* Pl.'s Mem. of Law at p. 11; Tr. at p. 331. Plaintiff's contention that his examination was premature is therefore misplaced.

### b. *Consideration of Dr. Sethi's Findings*

Plaintiff next contends that Dr. Sethi's findings of moderate and moderately severe carpal tunnel and cubital tunnel were not properly accounted for in the RFC. Pl.'s Mem. of

Law at p. 9. This argument is unpersuasive. First, Dr. Sethi's findings of "moderately severe right and moderate left median mononeurophatics at the level of both wrists, bilateral carpal tunnel syndrome" are diagnostic findings, not functional analyses. Tr. at p. 349. ALJ Wesner appropriately considered Dr. Sethi's findings, including Plaintiff's complaints to Dr. Sethi, the testing that was performed, and Dr. Sethi's diagnoses. Tr. at p. 85. The ALJ found that these impairments would not limit Plaintiff beyond sedentary limitations, in part because after Plaintiff's two appointments with Dr. Sethi in June of 2014, she did not follow up with him for additional treatment, and there was no indication that she sought any related treatment. *Id.*

### c. *Lack of Treatment for Carpal Tunnel and Cubital Tunnel Syndromes*

Plaintiff contends that the ALJ erred in basing his determination that she was not disabled on her lack of treatment. Pl.'s Mem. of Law at p. 11. While Plaintiff is correct that a lack of treatment is not necessarily indicative of a lack of disability, ALJ Wesner's analysis is relevant not only to Plaintiff's failure to seek treatment, but also reflects the "absence of evidence of [ ] deficits and a corresponding lack of meaningful clinical markers of total disability." *Oliphant v. Astrue*, 2012 WL 3541820, *20 (E.D.N.Y. Aug. 14, 2012). Here, the ALJ explained that "there is no evidence that the claimant ever followed the doctor's suggestion of undergoing physical therapy," and that "[g]iven the absence of treatment after June 2014 and the absence of objective supporting evidence, I conclude that the claimant's [conditions] only restricts the claimant to a residual functional capacity for a full range of sedentary work." Tr. at p. 85. ALJ Wesner's determination reflects the fact that there is very

little evidence in the record regarding any pain or treatment for Plaintiff's carpal tunnel or cubital tunnel syndromes. This is a proper consideration. *See* S.S.R. 96-7p, 1996 WL 374186, at * 7, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Clams: Assessing the Credibility of an Individual's Statements* (S.S.A. 1996).

### *d. Consideration of New Evidence*

An additional issue is that two of the four documents to which Plaintiff cites as demonstrating upper extremity problems are from examinations conducted after the date of ALJ Wesner's determination. Pl.'s Mem. of Law at p. 9. At the time of ALJ Wesner's determination, the medical evidence demonstrating any potential impairments caused by these conditions was sparse. *See* Tr., *generally*. The evidence that was documented after the date of ALJ Wesner's decision was not considered by ALJ Wesner, or by the Appeals Council in its denial of Plaintiff's request for review of the ALJ's determination. Tr. at p. 2 ("We also looked at medical evidence dated June 29, 2015 through September 29, 2015 . . . September 29, 2015 through March 8, 2016 . . . [and] November 3, 2015. . . . The Administrative Law Judge decided your case through May 28, 2015. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 28, 2015."). This was proper.

"[A] district court may remand a final decision of the Commissioner and order the Commissioner to consider additional evidence 'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Donaldson-Rudd v. Astrue*, 2009 WL

2148297, \*1 (D. Conn. July 17, 2009) (quoting 42 U.S.C. § 405(g)). The new evidence will only be considered where it "relates to the period on or before the dates of the hearing decision." 20 C.F.R. §§ 404.970(a)(5) & § 416.1470(a)(5).

> The [party seeking the remand] must show that the proffered evidence is (1) "new" and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits where denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently. Finally, claimant must show (3) good cause for [his] failure to present the evidence earlier.

*Donaldson-Rudd v. Astrue*, 2009 WL 214829, at \*1 (quoting *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)).

"Materiality requires that the new evidence not concern a later-acquired disability or the subsequent deterioration of the previous non-disabling condition." *Pearson v. Astrue*, 2012 WL 527675, at \*11-12 (N.D.N.Y. Feb. 17, 2012) (internal quotation marks omitted) (rejecting the plaintiff's contentions that the Appeals Council should have considered evidence relating to carpal tunnel syndrome where the severity had increased significantly post-hearing, because "[e]vidence of a deteriorating condition is not material to the ALJ's decision if it is documented after the ALJ rendered the decision."). The new evidence here does not relate to the relevant time period. Instead, it only demonstrates that the severity of Plaintiff's conditions increased after the date of the determination. *See* Tr. at pp. 12 & 18. It was therefore proper that the Appeals Council did not consider the evidence that was documented after ALJ's Wesner's determination. In fact, Plaintiff has never attempted to make a showing that would allow the Appeals Council to consider the new evidence. The

aggravation of Plaintiff's carpal tunnel and cubital tunnel syndromes is therefore better placed in a new application for benefits. *See Quinlivan v. Comm'r of Soc. Sec.*, 2011 WL 2413491, at *8 (N.D.N.Y. May 23, 2011), *report and recommendation adopted*, 2011 WL 2295060 (N.D.N.Y. June 10, 2011) ("If Plaintiff did suffer such an aggravation, his proper remedy would be to submit a new application for benefits.").

### e. Treating Source Opinion

Plaintiff next contends that ALJ Wesner should have found limitations in her hand usage, based on her treating source's evaluation. Pl.'s Mem. of Law at pp. 11-12. Although acknowledging that Dr. Fiore and FNP Vernold are Plaintiff's treating sources, ALJ Wesner gave little weight to their opinion. Tr. at pp. 84 & 87.

Where conflicts arise in the medical evidence, their resolution is properly entrusted to the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). The ALJ noted internal inconsistencies in the opinion of Dr. Fiore and FNP Vernold, which included an assessment that Plaintiff could safely lift and carry fifty pounds frequently, but also assessed that she could sit and stand/walk for less than two hours in an eight hour workday. Tr. at p. 85 (citing Tr. at pp. 329-31 ("'frequently' means between 1/3 to 2/3 of the working day.")). ALJ Wesner also noted the apparent inconsistency between their prognosis of "fair" while opining severe functional limitations, and that Dr. Fiore and FNP Vernold failed to complete the section of the form regarding the nature, length and frequency of their contact with Plaintiff. Tr. at pp. 84-85. The ALJ also considered the inconsistency of this opinion with Dr. Rosenberg's

findings one month later. Tr. at p. 85. ALJ Wesner described that the opinions are "poorly supported, are too subjective given the medical evidence of record, and are contradicted by or inconsistent with other substantial medical evidence." Tr. at p. 84.

By explaining why he discounted Plaintiff's treating providers' opinion, including due to inconsistency within the opinion and with other opinions in the record, "the ALJ applied the substance of the treating physician rule," and provided "'good reasons' for the weight [he] g[ave] to the treating source's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004). While the ALJ did not explicitly review each factor in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the ALJ properly assessed the regulatory factors, and "[w]here, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation." *Perry v. Comm'r of Soc. Sec.*, 2017 WL 5508775, *4-5 (N.D.N.Y. Jan. 23, 2017), *aff'd*, *Perry v. Berryhill*, 711 Fed. Appx. 9 (2d Cir. 2017) (citing *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013)). The ALJ therefore properly explained why he gave the opinion of Plaintiff's treating providers little weight.

The Court notes that the record Plaintiff references from her treating sources is a "Medical Opinion re: Ability to do Physical Activities," which is a standardized form and does not contain any explanation for the bases of Dr. Fiore and FNP Vernold's determinations. Tr. at pp. 329-31. It is therefore "only marginally useful for purposes of creating a meaningful and reviewable factual record." *Halloran v. Barnhart*, 362 F.3d at 31 n.2; *see also Emery v. Astrue*, 2012 WL 4892635, *10 (D. Vt. Oct. 15, 2012).

### *f. Plaintiff's Credibility*

Finally, Plaintiff contends that the ALJ should have given more weight to her testimony that she has difficulties with her hands. Pl.'s Mem. of Law at p. 12. ALJ Wesner found that Plaintiff's subjective complaints of pain and discomfort and resulting limitations were not credible to the extent alleged. Tr. at p. 87.

In general, ALJ Wesner found Plaintiff to be not fully credible, noting inconsistencies between the abilities she reported in a disability questionnaire and her measured abilities and statements to providers in various medical examinations. Tr. at pp. 86 & 87; *see* SSR 96-7P, 1996 WL 374186, *5-6 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). In particular, the ALJ found that Plaintiff's complaints regarding her hands were at odds with Dr. Rosenberg's findings that her dexterity was intact and grip strength was full. Tr. at pp. 86-87. ALJ Wesner also considered the criteria set forth in 20 C.F.R. §§ 404.1529 and 416.929, and SSR 96-7P in determining the impact of Plaintiff's described symptoms on her RFC. Tr. at pp. 86-87. ALJ Wesner concluded Plaintiff could not be considered fully credible, based on, *inter alia*, the inconsistency between Plaintiff's self-reported problems with activities of daily living and her physicians' examinations and observations; the inconsistency between the pain she alleged in her disability proceedings and the pain she had previously reported to her physicians; her lack of pain management regimen or other treatment for her conditions; and her statements to her providers that she was working full time and often walked up to five miles per day, after her alleged onset date. *Id.*

For all of the above reasons, ALJ Wesner has provided "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and the RFC finding as to Plaintiff's carpal tunnel and cubital tunnel syndromes is supported by substantial evidence. *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. at 229.

### 2. *Reliance on the Medical-Vocational Guidelines*

Plaintiff next contends that ALJ Wesner erred by relying solely on the Grids because, "where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform . . . the Commissioner must introduce the testimony of a vocational expert." Pl.'s Mem. of Law at p. 12 (quoting *Butts v. Barnhart*, 388 F.3d 377, 383-84 (2d Cir. 2004)). Plaintiff contends that her carpal tunnel and cubital tunnel syndromes constitute significant nonexertional impairments, and that ALJ Wesner was therefore required to consult with a vocational expert. Pl.'s Mem. of Law at pp. 12-13 (citing SSR 85-15). ALJ Wesner found, however, that Plaintiff's carpal tunnel and cubital tunnel syndromes cause no functional impairments and that she could perform the full range of sedentary work. Tr. at p. 79. As discussed above, the Court finds that this determination was supported by substantial evidence. As such, it was proper for the ALJ to rely on the Grids.

### 3. *RFC Determination that Plaintiff Can Perform the Full Range of Sedentary Work*

Plaintiff contends that ALJ Wesner's finding that she can perform the full range of sedentary work, up to six hours per day (SSR 83-10), is not supported by substantial evidence because evidence shows significant impairments to her neck and back. Pl.'s Mem.

of Law, p. 13.

Plaintiff contends that the ALJ erred in giving the opinion of Dr. Fiore and FNP Vernold limited weight because there is no contrary opinion regarding the time Plaintiff can sit per day. *Id.* As described above, ALJ Wesner afforded the opinion of these sources limited weight. ALJ Wesner provided an explanation for this determination, which is grounded in the record. *See* Tr. at pp. 83-85. Plaintiff contends that "[t]here is no substantial contrary opinion because the ALJ gives Dr. Rosenberg 'very little weight' and his conclusions are inconsistent with his own examination findings and the clinical evidence of record." Pl.'s Mem. of Law p. 14. ALJ Wesner gave a portion of Dr. Rosenberg's opinion little weight, because he found it to be inconsistent with the objective medical evidence. Tr. at p. 83. The ALJ accepted Dr. Rosenberg's opinion that Plaintiff had the RFC to perform a full range of sedentary work, however, because it was consistent with the objective medical evidence. *Id.* An ALJ may credit a portion of an opinion and not another, as long as the ALJ provides an explanation for doing so. *See, e.g.*, *Wheeler v. Berryhill*, 2017 WL 4510466, *3-4 (W.D.N.Y. Oct. 10, 2017). Here, ALJ Wesner explained his rationale for only crediting a portion of Dr. Rosenberg's opinion. As such, there was an opinion as to Plaintiff's ability to perform sedentary work that the ALJ accepted. The RFC finding as to Plaintiff's ability to perform sedentary work is therefore supported by substantial evidence. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258.

### III. CONCLUSION

For the reasons stated herein, it is hereby

*-16-*

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Date: March 14, 2018
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge